1 | David D. Bibiyan (SBN 287811)
2 | *david@tomorrowlaw.com*
  | Diego Aviles (SBN 315533)
3 | *diego@tomorrowlaw.com*
  | Sara Ehsani-Nia (SBN 326501)
4 | *sara@tomorrowlaw.com*
  | **BIBIYAN LAW GROUP, P.C.**
5 | 8484 Wilshire Boulevard, Suite 500
  | Beverly Hills, California 90211
6 | Tel; (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, ALVARO LOPEZ CABRERA, on behalf of himself and all others similarly situated

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO LOPEZ CABRERA, on behalf of himself and all others similarly situated, | CASE NO.: 1:21-cv-00748-AWI-JLT |
| | **NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiffs, | |
| v. | *Filed Under Separate Cover:* |
| SOUTH VALLEY ALMOND COMPANY, LLC, a California limited liability company; AGRESERVES, INC., a Utah Corporation; and DOES 1 through 100, inclusive, | **DECLARATION OF DIEGO AVILES IN SUPPORT THEREOF** |
| Defendants. | DATE: June 28, 2021 |
| | TIME: 1:30 p.m. |
| | COURTRM: 2, 8th Floor |
| | State Action Filed: April 1, 2021 |
| | Removal Date: May 7, 2021 |
| | *(Kern County Superior Court, Case No.: BCV-100733)* |
| | [Proposed Order Lodged Herewith] |
| | Trial Date: None Set |

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 28, 2021 at 1:30 p.m., or as soon thereafter as the matter can be heard in the above-referenced court, located at 2500 Tulare Street, 8th Floor – Courtroom 2, Fresno, California, plaintiff ALVARO LOPEZ CABRERA ("Plaintiff"), on behalf of himself and all others similarly situated, will and hereby does move this Court for an Order remanding the instant Action back to State Court and that the Clerk of the Court send a certified copy of the Order to the clerk of the State Court where the Action was originally filed because this Court lacks subject matter jurisdiction over the Action.

This Motion will be based on this Notice, the Memorandum of Points and Authorities, the declaration of Diego Aviles, the Proposed Order lodged concurrently herewith, and on the complete files and records in this action, and all other matters and evidence that may be presented at the hearing on this Motion.

Dated: May 31, 2021                    BIBIYAN LAW GROUP, P.C.


                                       BY: /s/ Diego Aviles
                                          DIEGO AVILES
                                       Attorneys for Plaintiff, ALVARO LOPEZ
                                       CABRERA, on behalf of himself and all others
                                       similarly situated

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

# **TABLE OF CONTENTS**

**Pages**

TABLE OF CONTENTS…………………………………………………………3-4

TABLE OF AUTHORITIES………………………………………………...5-7

MEMORANDUM OF POINTS AND AUTHORITIES……………………………7

I.   PROCEDURAL HISTORY………………………………………….....7

II.  SUMMARY OF ARGUMENT……………………………………….......7-9

III.  DEFENDANTS BEAR THE BURDEN OF PROVING THAT THE REQUISITE JURISDICTION EXISTS TO SUPPORT REMOVAL OR THAT MINIMAL DIVERSITY EXISTS……………………………………………………...9-10

IV.  THIS COURT SHOULD REMAND THE ACTION BECAUSE DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF EVIDENCE THAT THE AMOUNT IN CONTROVERSY UNDER TRADITIONAL DIVERSITY IS SATISFIED…….………………………………………..…10

   A. Defendants' Calculation of Unpaid Overtime Wages Are Exaggerated, Unwarranted, Unsupported and Rest on Faulty Assumptions………………………………………..12

   B. Defendants' Calculation of Unpaid Minimum Wages Are Fatally Flawed……………………………………………15

   C. Defendants' Calculation of Meal Period Payments Rests on False or Speculative Assumptions and is Thus Unsupported…………...16-17

   D. Defendants' Calculation of Rest Period Payments Is Similarly Exaggerated, Unwarranted, and Unsupported………...18-19

   E. Defendants' Calculation of Penalties for Wage Statement Violations Are Purposely Overstate and Rest on Faulty Premises…………………………………………..19-20

   F. Defendants' Calculation of Unpaid Reimbursements Are Wholly Unsupported and Must Fail………………………20

3

G. Defendants' Attempt to Balloon the Amount in Controversy with Unsubstantiated Attorneys' Fees is Improper and Should be Rejected…………………………………………………….20

V.   REMAND IS WARRANTED BECAUSE DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF THE EVIVDENCE THAT COMPLETE DIVERSITY EXISTS OR THAT THE AMOUNT IN CONTROVERSY UNDER TRADITIONAL DIVERSITY IS SATISFIED……………………………………………………....22-28

A. Complete Diversity Between the Parties Does Not Exist…………….22

B. Defendants' Amount in Controversy Does Not Exceed $75,000

i.   Defendants' Calculation of Unpaid Overtime and Minimum Wage is Exaggerated, Unwarranted, Unsupported and Rests on Faulty Assumptions……………………………….…..23-24

ii.   Defendants' Calculation of Meal & Rest Period Payments Rest on False or Speculative Assumptions and is Thus Unsupported…………………………………….…..25-26

iii.   Defendants' Calculation of Waiting Time Penalties that May Be Owed Rests on False or Speculative Assumptions and is Thus Unsupported…………………………………..…..25-26

iv.   Defendants' Calculation of Attorneys' Fees Are Wholly Improper and Used Only to Balloon the Amount in Controversy……………………………………………26

VI.   CONCLUSION…………………………………...………………………27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

# TABLE OF AUTHORITIES

**Pages**

## SUPREME COURT CASES

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
 574 U.S. 81 (2014). ………………………………………………………11

*Lincoln Prop. Co. v. Roche*,
 546 U.S. 81 (2005)………………………………………………………...22

*See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998)………22

## FEDERAL CASES

*Abrego Abrego v. Dow Chem Co.*,
 443 F.3d 676 (9th Cir. 2006)………………………………………………10

*Altamirano v. Shaw Industries, Inc.*,
 2013 WL 2950600, *10 (N.D. Cal. 2013) ………………………………14

*Amoche v. Guarantee Trust Life Insurance Co.*,
 556 F.3d 41 (1st Cir. 2009)………………………………………………12

*Brill v. Countrywide Home Loans, Inc.*,
 427 F.3d 446 (7th Cir. 2005)……………………………………………...12

*Campbell v. Vitran Express, Inc.*,
 2010 WL 4971944, at *4 (C.D. Cal. 2010)………………………………21

*Contreras v. J.R. Simplot Company*
 2017 WL 4457228, at *3 (E.D. Cal. 2017)………………………………13

*Evans v. Walter Indus., Inc.*,
 449 F.3d 1159 (11th Cir. 2006)…………………………………………...12

*Fritsch v. Swift Transp. Co. of Ariz.*,
 899 F.3d 785 (9th Cir. 2018)……………………………………………..21

*Garibay v. Archstone Cmtys, LLC*,
 539 Fed.Appx 736 (9th Cir. 2013)…………………….................11, 12

*Garza v. Brinderson Constructors, Inc.*,
 178 F.Supp.3d 906, 911 (N.D. Cal. 2016)………………………………13

*Gipson v. Champion Home Builders, Inc.* (E.D. Cal. 2020)
 2020 WL 4048503 (E.D. Cal. 2020)……………………………...10, 18, 26

*Gaus v. Mile, Inc.*,
 980 F.2d 564 (9th Cir. 1992)……………………………………….......10

*Grancare, LLC v. Thrower by and through Mills*,
 889 F.3d 543 (9th Cir. 2018)……………………………………………23

*Ibarra v. Manheim Investments, Inc.*,

5

775 F.3d 1193 (9th Cir. 2015)……………………………………...10, 11, 18, 24

*LaCross v. Knight Transp, Inc.*,
773 F.3d 1200 (9th Cir. 2015)………………………………………….11

*Lewis v. Verizon Communications, Inc.*,
627 F.3d 395 (9th Cir. 2010)………………………………………...10

*Ling v. Duravent*,
2020 WL 1274511, at * 3 (E.D. Cal. Mar. 17, 2020)……………………16, 18

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
479 F.3d 994 (9th Cir. 2007) ………………………………………....12

*Luna v. Pronto California General Agency, LLC*,
2020 WL 4883879, at * 3 (C.D. Cal. Aug. 19, 2020)…………………….15

*Marentes v. Key Energy Services California, Inc.*,
2015 WL 756516, *6 (E.D. Cal. 2015)………………………………...11

*McGill v. Pacific Bell Telephone Company*
139 F.Supp.3d 1109 (C.D. Cal. 2015) …………………………………10

*Mitchell v. John Bean Technologies Corp.*,
2017 WL 4675628 (S.D. Cal. 2017)……………………………………22

*Nunes v. Home Depot U.S.A., Inc.*,
2019 WL 4316903, at *2 (E.D. Cal. 2019)…………………………….17

*Patel v. Nike Retail Services, Inc.*
58 F.Supp.3d 1032(N.D. Cal. 2014)……………………………………19

*Serrano v. 180 Connect, Inc.*,
478 F.3d 1018 (9th Cir. 2007)………………………………………….9

*Smith v. Diamond Resorts Management, Inc.*
2016 WL 356020 (C.D. Cal. 2016) ………...………………….……..21, 25

*Snow v. Watkins and Shepard Trucking, Inc.*,
2019 WL 1254571, at *4 (C.D. Cal. 2019)……………………………..21

*Valdez v. Allstate Ins. Co.*,
372 F.3d 1115 (9th Cir. 2004)………………………………………….9

*Wicker v. ASC Profiles LLC*,
2021 WL 1187271, at *3 (E.D. Cal. Mar. 30, 2021)…………………….14

*Weston v. Helmerich & Payne Inter. Drilling Co.*,
2013 WL 5274283, *5-6 (E.D. Cal. 2019)……………………………..13

**CALIFORNIA LABOR CODE**

Cal. Labor Code § 226(a)………………………………….…........12, 19

6

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PROCEDURAL HISTORY

On April 1, 2021, plaintiff ALVARO LOPEZ CABRERA ("Plaintiff"), on behalf of himself and all others similarly situated, filed a putative class action complaint ("Complaint") in the County of Kern Superior Court against defendants SOUTH VALEEY ALMOND COMPANY, LLC ("SVA") and AGRESERVES, INC. ("AGRESERVES" and together with SVA, "Defendants," and collectively with Plaintiff, the "Parties"), asserting causes of action for:  (1) Failure To Pay Overtime Wages; (2) Failure To Pay Minimum Wages; (3) Failure To Provide Meal Periods Or Compensation In Lieu Thereof; (4) Failure to Provide Rest Periods or Compensation In Lieu Thereof; (5) Waiting Time Penalties; (6) Wage Statement Violations; (7) Failure to Indemnify; and (8) Unfair Competition.  *See* Complaint.

On May 7, 2021, Defendants filed a Notice of Removal based on The Class Action Fairness Act ("CAFA"), codified at, *inter alia*, 28 U.S.C. sections 1332(d), 1441, and 1446.  *See* Dkt. #1, pg. 1:22-25.  Just one week later, without any outreach to Plaintiff, on May 14, 2021, Defendants filed a Motion to Dismiss Plaintiff's Complaint and Class Claims which is currently scheduled to be heard on June 14, 2021. *See* Dkt. #7.

On or about May 19, 2021, Plaintiff requested from counsel for Defendant to a continuance of their 12(b)(6) Motion hearing date so that the Court could first rule on whether this Court has jurisdiction. *See* Declaration of Diego Aviles ["Aviles Decl."], ¶ 3.  Counsel for Defendants declined to such a continuance. *Id.*

Plaintiff now files the instant Motion for Remand.

### II.   SUMMARY OF ARGUMENT

Plaintiff seeks to remand this Action back to the State Court where it rightly belongs.  While Defendants' have filed a Motion to Dismiss, the Motion to Remand is based on the fact that Defendants' notice of removal falls markedly short of meeting its burden of providing proof, by a preponderance of evidence, that this Court has

7

subject matter jurisdiction over this Action as it fails to show that the amount in controversy under CAFA is satisfied, that minimal or complete diversity exists, *or* that the amount in controversy under traditional diversity is satisfied.

Specifically, with respect to the amount in controversy under CAFA, Defendants *fail to include any declaration supporting their allegations* and fail to identify the documents they reviewed and analyzed to determine the average hourly rates used for employees or the quantity of workweeks it states were worked by employees.  Defendants further fail to identify the documents they reviewed to determine the number of former, current, and total employees they claim are putative class members, whether they are even California employees, or even when they began or completed their investigation that led them to determine removability.

Moreover, Defendants make bare, baseless and wildly exaggerated assumptions to meet the amount-in-controversy threshold.  For example, without any backing in fact or in the Complaint for the following assumptions, Defendants assume:

- That all putative class members worked full 8.83 hour shifts every single shift;
- A 100% violation rate for overtime and that all putative class members are owed a full two hours of overtime per week;
- That all putative class members, despite working more than 8 hours per shift, are additionally owed a <u>full 3 hours</u> of minimum wages with liquidated damages;
- That all putative class members are entitled to second meal periods every shift despite the contention that all class members work less than 10 hours per shift;
- A 100% violation rate for waiting time penalties;
- A 100% violation rate for wage statement violations;
- That Defendants can apply the penalties under Labor Code § 226 to Labor Code § 2802 violations (they cannot);
- Over $2,086,616.43 in anticipated attorneys' fees which have not been incurred and are based on 25% of an already inflated damages amount;

8

- That every single individual wage-and-hour action necessarily meets the jurisdictional $75,000 threshold based on attorneys' fees alone.

And, despite these calculations based off impossible, if not just improbable and unreasonable events, they still fall markedly below the amount-in-controversy threshold. Indeed, Defendants appear to be working off a recycled Notice of Removal from another matter as they include language and refer to causes of action not included in Plaintiff's Complaint.

Finally, Defendants fail to make the requisite showing that Plaintiff is a citizen of California, thus failing to meet the diversity requirement under CAFA and further ignore that complete diversity is lacking for removal to be proper under traditional diversity jurisdiction. Because the information necessary to support removal is within the control of Defendants as the employers of Plaintiff and the other putative class members, there is no excuse for Defendants' provision of unsupported conjecture to support removal. Since Defendants' evidence falls well short of its requirement to establish subject matter jurisdiction under CAFA or under traditional diversity, Plaintiff respectfully requests that this Court remand the Action.

## III. DEFENDANTS BEAR THE BURDEN OF PROVING THAT THE REQUISITE JURISDICTION EXISTS TO SUPPORT REMOVAL OR THAT MINIMAL DIVERSITY EXISTS

The defendant seeking removal of an action to federal court has the burden of establishing grounds for federal jurisdiction in the case. *Valdez v. Allstate Ins. Co.* 372 F.3d 1115, 1117 (9th Cir. 2004). Indeed, when a plaintiff contests a defendant's amount in controversy, there is no presumption in favor of removal. Rather, the Ninth Circuit has held that the removal statute is construed against removal. *Etheridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1992). The enactment of CAFA does not alter this rule. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ["[When enacting CAFA] Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction"].

9

Thus, whether or not an antiremoval presumption under CAFA exists, a removing party must nevertheless prove, by a preponderance of evidence, actual facts necessary to support the petition for removal; *e.g.*, the existence of diversity, the amount in controversy, or the federal nature of the claim. *Gaus v. Mile, Inc.* [*Gaus*], 980 F.2d 564, 566-567 (9th Cir. 1992).  Moreover, federal courts are courts of limited jurisdiction and strictly construe removal statutes against removal jurisdiction.  *Gaus* at 566; *accord McGill v. Pacific Bell Telephone Company,* 139 F.Supp.3d 1109, 1115 (C.D. Cal. 2015) ["Federal jurisdiction must be rejected if there is any doubt as to the right of removal."].  Likewise, under CAFA, "the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court." *Lewis v. Verizon Communications, Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) [citing *Abrego Abrego v. Dow Chem Co.,* 443 F.3d 676, 685 (9th Cir. 2006)]. Accordingly, if the Court cannot decide or determine whether a defendant has satisfied its burden to demonstrate, *by a preponderance of the evidence*, that jurisdiction exists, "the scales tip against federal-court jurisdiction." *See Gipson v. Champion Home Builders, Inc.* (E.D. Cal. 2020) citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195, 1199 (9th Cir. 2015) [the 9th Circuit found it insufficient to sustain jurisdiction and remanded the action where Defendant relied on a declaration which did not have proof regarding the violation rate].

Thus, if after consideration of the Parties' positions any doubt remains as to the propriety of removal, federal jurisdiction must be rejected, and the Action remanded.

## IV.   **THIS COURT SHOULD REMAND THE ACTION BECAUSE DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF EVIDENCE THAT THE AMOUNT IN CONTROVERSY IS MET**

Defendants' Notice of Removal is primarily based on diversity jurisdiction under CAFA, codified at 28 U.S.C. § 1332(d).  To establish jurisdiction, Defendants must demonstrate, at a minimum, that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10

However, as stated above, when a plaintiff contests a defendant's amount in controversy calculation, the defendant bears the burden of proving that removal was proper by a preponderance of evidence. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-89 (2014).  "[I]n determining the amount in controversy, courts first look to the complaint."  *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015).  Next, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary judgment-type evidence relevant to the amount in controversy at the time of removal."  *Id.* [internal quotations marks omitted].  This procedure prevents a defendant from establishing federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions," instead requiring the parties to rely on "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Id.* at 1197-1198.

When a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable.  *Id.* at 1199 [assumptions "cannot be pulled from thin air but need some reasonable ground underlying them"].  Therefore, it would be unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a "pattern and practice" of labor violations.  *Id.* at 1198-1199 ["a 'pattern and practice' of doing something does not necessarily mean *always* doing something"].  Instead, a defendant may establish the amount in controversy by presenting admissible statistical evidence taken from a representative sample and extrapolating to calculate the potential liability for the full class.  *See LaCross v. Knight Transp, Inc.,* 775 F.3d 1200, 1202-1203 (9th Cir. 2015).  Thus, a district court may reject a calculation for the amount in controversy where the only evidence provided was "a declaration by [defendants'] supervisor of payroll, which set forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages."  *See Garibay v. Archstone Cmtys LLC,* ["*Garibay*"] 539 Fed.Appx 763, 764 (9th Cir. 2013); *Marentes v. Key Energy Services California, Inc.,*

11

2015 WL 756516, *6 (E.D. Cal. 2015); *see also Lowdermilk v. U.S. Bank Nat'l Ass'n, overruled on other grounds,* 479 F.3d 994, 1002 (9th Cir. 2007) [a court "cannot base [a finding of] jurisdiction on [a] [d]efendant's speculation and conjecture"].

Further, while the amount in controversy may well require an analysis of what both parties have shown, district courts have found it proper to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met. *Amoche v. Guarantee Trust Life Insurance Co.,* 556 F.3d 41, 51 (1st Cir. 2009); *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164 (11th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447-48 (7th Cir. 2005).

Here, Plaintiff's Complaint does not specify an amount of damages. Therefore, Defendants must offer evidence sufficient to prove that the amount in controversy can be satisfied (*i.e.*, that more likely than not, the amount in controversy exceeds $5,000,000). Of course, Defendants are required by law to be in possession of the vast majority of wage records that would form the amount in controversy. *See, e.g.,* Cal. Lab. Code, § 226(a). Thus, this should not be a difficult burden to carry.

Defendants nevertheless *failed to file any declaration whatsoever* in the Notice of Removal it filed in federal court. *See* Dkt. #1. Thus, as in *Garibay*, this Court should reject Defendants' unfounded and unsupported calculations and on this basis alone remand the Action. However, even if Defendants' unsupported Notice of Removal is given any weight, it cannot support removal as Defendants fail to show by any summary judgment-type evidence, yet alone credible evidence, that Plaintiff's claims aggregate to a $5,000,000 amount in controversy.

### A. Defendants' Calculation of Unpaid Overtime Wages Are Exaggerated, Unwarranted, Unsupported and Rest on Faulty Assumptions

By way of reminder, the Ninth Circuit has held that alleging a "pattern and practice" of doing something does not necessarily mean *always* doing something. *Ibarra v. Manheim Investments, Inc.* 775 F.3d at 1199 (9th Cir. 2015) (emphasis

12

added); *see also*, *Garza v. Brinderson Constructors, Inc.,* 178 F.Supp.3d 906, 911 (N.D. Cal. 2016) [finding that because Plaintiff's complaint did not allege universal violations, [defendant] did not establish a reasonable basis for its assumption of a 100% violation rate].   Indeed, a defendant cannot meet its evidentiary burden by simply assuming there was unpaid overtime for every employee without providing a basis for its assumption.  *See e.g., Contreras v. J.R. Simplot Company*, 2017 WL 4457228, at *3 (E.D. Cal. 2017) [declaration stating 1 hour of unpaid overtime per employee unjustified]. Moreover, a Defendant that uses averages in their calculations without demonstrating that there is a normal distribution as to each data point ensures that the calculations are inaccurate for virtually every employee. *See Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283, at * 5 (E.D. Cal. 2013).

Here, Plaintiff alleges in his Complaint only that Defendants failed to pay overtime **at times** and ***on occasions*** as a result of Plaintiff and others similarly situated being "to accurately track and/or pay for all minutes actually worked at the proper overtime rate of pay." *See* Complaint, ¶¶ 11, 34, 35.

Defendants nevertheless make several unwarranted assumptions to reach the conclusion that there is $1,327,909.14 in controversy. *See* Dkt. #1, ¶ 89-89.  In order to reach this figure, Defendants, without evidence, contend that they employed 658 putative class members during the class period.  Then, confusingly, Defendants contend that they employed the average non-exempt employee approximately 23.30 weeks per year with an average rate of pay of $14.13 per hour. *Id.*, ¶ 88.  Worse, Defendants assume without any basis in fact a 100% violation rate for unpaid overtime and conclude that every employee is owed a whopping 2-hours of unpaid overtime per week. Defendants' contentions are wholly unwarranted for several reasons.

First, not only do Defendants fail to explain why using an average rate of pay makes sense in this case, but they fail to explain why using an average workweek count per employee makes sense.  This is because it does not make

13

sense, particularly as Defendants could have just used the actual number of workweeks.  Using an average number of workweeks all but ensures that the calculations are inaccurate for virtually every employee, including those employees that worked in 2017, 2018, and 2019, that earned less than $14 per hour.  What of those employees that worked less than 23.30 weeks?  Why do Defendants' calculations include an average of 47.61 weeks in the actual calculation?  Defendants appear to have pulled numbers out of thin air, which cannot form the basis of jurisdiction.

Second, and most egregiously, there is no rational basis or support for Defendants' assuming a 100% violation rate equaling 2 hours of unpaid overtime for every employee, particularly as Plaintiff has said that the failure to pay overtime is for a failure to accurately track and pay for all **minutes**, not hours. Moreover, given that Plaintiff has alleged a failure to pay overtime, occurring only "**at times**," a more reasonable violation rate would be a 20%. *See e.g., Wicker v. ASC Profiles LLC*, 2021 WL 1187271, at *3 (E.D. Cal. Mar. 30, 2021) [finding a 20 percent violation rate reasonable when a plaintiff alleges a pattern and practice of failing to provide overtime compensation]; *see also e.g., Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, *10 (N.D. Cal. 2013) [finding thirty minutes per week (*i.e.*, six minutes per day) claim reasonable rather than Defendants' 2-hours per week assumption].

Accordingly, Defendants' overtime calculation is wildly overstated and should at the very least be reduced to $265,581.83 ($1,327,909.14 x .20 violation rate).  However, even this reduced amount should not be considered because Defendants' calculations are entirely unsupported, is still based on a whopping 2-hour number, and use averages that appear to be pulled from thin air.  As such, Defendants have not provided the summary judgment-type proof required to carry their burden of proving, by a preponderance of evidence, that $1,327,909.14 (or anything close to that) is in controversy for Plaintiff's unpaid overtime claim.

**B. <u>Defendants' Calculation of Unpaid Minimum Wages Are Fatally Flawed</u>**

Defendants' calculations of unpaid minimum wages rest on the same faulty assumptions as the calculations for unpaid overtime wages.  Defendants again, without providing an explanation, use an average workweek count rather than the actual workweek count, use an average employment period rather than using hire and termination dates, and use an average rate of pay.  Yet despite using the same assumptions Defendants used for unpaid overtime, they now conclude that Plaintiff's Complaint permits a 100% violation rate for unpaid minimum wages resulting in a *whopping 3 hours of unpaid minimum wages per week*.  This is an absurd calculation.

First, Defendants' calculations are fatally flawed from the outset.  Defendants allege that putative class members worked "approximately 23.30 weeks per year, with a regularly scheduled shift of 8.83 hours per day…" *See* Dkt. #1, ¶ 91.  Thus, if all employees worked more than 8 hours, than any amount of unpaid minimum wages would necessarily be unpaid overtime.  Defendants cannot claim damages for both. *See e.g., Luna v. Pronto California General Agency, LLC*, 2020 WL 4883879, at * 3 (C.D. Cal. Aug. 19, 2020) ["defendants provide no explanation for why [these unpaid wages] would be counted as both overtime wages and minimum wages, when logically, the time could be only one or the other"].

Second, notwithstanding the fact that based on Defendants' assumptions, <u>no amounts should be included in the amount in controversy for this claim</u>, Defendants assert, again without any evidence or support, a 100% violation for unpaid minimum wages.  As stated above, Plaintiff has not alleged such a violation rate.  Rather, Plaintiff has expressly limited her allegations and states that Defendants have **<u>at times</u>** failed to accurately track and pay for all **<u>minutes</u>** actually worked. Compl., ¶ 12. Worse, nothing in Plaintiff's Complaint or in Defendants' removal papers warrant a whopping 3 hours of unpaid minimum wages each and every week.  Thus, even if Defendants' calculations are considered (which they should not), the amount in

controversy should be drastically reduced to a more reasonable 36 minutes per week (*i.e.,* 6 minutes per shift), and then further reduced to a 20% violation rate.

### C. <u>Defendants' Calculation of Meal Period Payments Rests on False or Speculative Assumptions and is Thus Unsupported</u>

Plaintiff's Complaint alleges Defendants have "**at times**, failed to provide Plaintiff and Class Members, **or some of them**, full, timely thirty (30) minute meal periods…" Complaint, ¶ 13.  Then, in the fourth cause of action, Plaintiff alleges that by Defendants' occasional failure to provide Plaintiff and Class Members with the meal periods contemplated by Labor Code § 512 and failing, "**at times**," to provide compensation for such unprovided meal periods…Defendants willfully violated the provisions of Labor Code § 512 and applicable Wage Orders."  Complaint, ¶ 48.

Yet despite Plaintiff's express language stating that there were only occasional meal period violations, and then, that Defendants **at times** failed to pay premium payments, Defendants blatantly misrepresent Plaintiff's Complaint and falsely claim that Plaintiff alleges Plaintiff and Class Members were "frequently not provided with a meal period." *See* Dkt. #1, ¶ 98.  Defendants also allege that Plaintiff uses the language "regular," "often," and "frequent" to support her allegations. *Id.*, at ¶ 30.  A search of Plaintiff's Complaint demonstrates that the word "frequently" does not appear even once in the pleading. Neither do the words "often," or "frequent". "Regular" only appears in context to refer to the "regular rate of pay."  It appears that Defendants again pull numbers (and language) out of thin air.  Such misleading comments are improper in any setting, but particularly as part of a court record.

Nevertheless, Defendants place $1,327,909.14 in controversy. Defendants reach this figure by again using averages of workweeks, rates of pay, and hours per day.  Indeed, while Defendants purport to use a 25% violation rate for meal periods Defendants do not provide any ground for assuming the entire putative class experienced even one meal period violation per week (*i.e.,* a 100% violation). *See Ling v. Duravent*, 2020 WL 1274511, at * 3 (E.D. Cal. Mar. 17, 2020) [finding

16

Defendants' violation rate invalid because Defendants provided no reasonable ground for assuming the entire class experienced one meal or rest period violation per week given that the complaint did not support such claims].

On top of the improper assumptions, the calculations used are also impossible given Defendants' assumptions. For instance, Defendants allege that employees worked an average of 8.83 hours per day. Notwithstanding their own assumptions, Defendants still include violations for second meal period violations when an employee would only be entitled to a second meal period after the 10th hour of work. Accordingly, based on Defendants' own assumptions, no amounts should be included for the second meal period violation.

Thus, a more reasonable calculation would use a 20% violation rate (*i.e.,* one meal period per week). *See e.g., Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *2 (E.D. Cal. 2019) [finding a 20% violation rate reasonable where complaint alleged Defendants caused class members to, 'from time-to-time' forfeit meal breaks without compensation]. While Plaintiff believes no amounts should be included in the amount in controversy due to Defendants' faulty assumptions, including the use of averages, when reducing the violation to one meal period per week, the amount in controversy comes out to $442,6636.38 (1 meal period violation x $14.13 x 47.61 weeks x 658 class members). This amount is further reduced if one assumes that not every class member suffered a weekly meal period violation.

In sum, Defendants have provided insufficient evidence to support: (1) a $14.13 hourly rate; (2) average employment period of 47.61 weeks; or, most egregiously (3) that all employees suffered a meal period violation and were never paid any premium pay for any unprovided meal periods. As such, Defendants have not provided the summary judgment-type proof required to carry its burden of proving, by a preponderance of evidence, that $1,327,909.14 is in controversy (or anything close to that) for the meal period claim.

/ / /

### D. **Defendants' Calculation of the Rest Period Amount in Controversy Is Similarly Exaggerated, Unwarranted, and Unsupported**

Plaintiff's Complaint alleges that Defendants, **at times** failed to authorize and permit Plaintiff and Class Members, **or some of them**, to take rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof. Complaint, ¶ 14. Again, where a complaint contains generalized allegations of illegal behavior, a removing defendant must supply "real evidence" grounding assumptions regarding the rate of statutory violations for calculating the amount in controversy. *Ibarra v. Manheim Investments, Inc.,* 755 F.3d at 1199 (9th Cir. 2015); *see Ling v. Duravent*, 2020 WL 1274511, at * 3 (E.D. Cal. Mar. 17, 2020) [finding Defendants' one rest period violation per week invalid because Defendants provided no reasonable ground for assuming the entire putative class experienced on rest period violation per week]

Here, Defendants allege that rest period payments amount to $1,327,909. *See* Dkt. #1, ¶ 105. Defendants reach this by again using averages for workweeks and hourly rates, thereby guaranteeing incorrect calculations for all. Again, the assumptions regarding the hourly rate and weeks worked are unsupported, unwarranted by Plaintiff's Complaint, and not based on any objective evidence from Defendants' records. Indeed, Plaintiff alleges in his Complaint only that Defendants *occasionally* failed to provide Plaintiff with compliant rest periods or compensation in lieu thereof. Plaintiff at no point alleged that employees *never* received rest periods or premium pay in lieu thereof, and Defendants failed to provide any basis from their records to support a 25% violation rate. **Nor did Defendants supply any evidence or other reasonable basis why every missed rest period should be assumed without payment of any premium pay.** As stated above, even where allegations allege systematic, regular, or consistent violations, it is reasonable to assume one violation per week (or 20%). *See e.g., Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, *6 (E.D. Cal. 2020) ["courts in this circuit have found that allegations of 'pattern and practice' support a 20% violation rate as

18

reasonable"].   Given the "at times" language Plaintiff uses throughout the Complaint, and the express language that "some of" the putative class, were not provided their requisite rest periods, like the meal period violations, even a 20% violation rate seems high.

In sum, much like Plaintiff's meal period claims, Defendants have provided no evidence to support: (1) a $14.13 hourly rate; (2) that employees missed three rest periods every workweek; or, most egregiously (3) that all employees missed three rest periods and were never paid any premium pay for unprovided rest periods. As such, Defendants have not provided the summary judgment-type proof required to carry its burden of proving, by a preponderance of evidence, that $1,327,909.14 (or anything close to that number) is in controversy.

### E.  Defendants' Calculation of Penalties for Wage Statement Violations is Purposely Overstated and Rests on Faulty Premises

Plaintiff's Complaint alleges that, **"at times"**, "Defendants failed to provide Plaintiff…accurate wage statements in accordance with Labor Code section 226, subdivision (a)." *See* Complaint, ¶¶ 16, 70, 72.  Yet despite the tempering language, Defendants again implement a 100% violation rate and place $421,200.00 in controversy. *See* Dkt. #1, ¶ 108. This is a faulty assumption that cannot form the basis of jurisdiction. *See Contreras v. J.R. Simplot Company*, 2017 WL 4457228, at *4 (E.D. Cal. 2017) [finding calculation that assumed every single member of the class would be entitled to recover penalties for every single pay period unsupported and could not be used to calculate the amount in controversy].

Moreover, not only do Defendants include a 100% violation rate without any support, but they also implement the "subsequent" violation rate of $100 without any evidence that they knew of the violations in the first place.  *See Patel v. Nike Retail Services, Inc.* (N.D. Cal. 2014) 58 F.Supp.3d 1032, 1042-43 [absent evidence that Defendants knew its actions violated the Labor Code, for purposes of remand, the court considers the initial rather than the subsequent rate for a § 226 claim].

19

As such, the calculations are speculative, unsupported, and thus, Defendants have failed to carry their burden to show $421,200 to be in controversy in connection with Plaintiff's claim for wage statement violations.

## F. **Defendants' Calculation of Unpaid Reimbursements Are Wholly Unsupported and Must Fail**

While all of Defendants' calculations are unsupported, Defendants' calculations for unpaid reimbursements are additionally not based in law. Indeed, with no explanation, Defendants appear to implement the penalties available under Labor Code § 226, and confusingly apply those penalties over a 3-year period for unpaid reimbursements. Plaintiff is at a loss as to why Defendants believe a whopping $1,149,500.00 is in controversy. *See* Dkt. #1, ¶ 112 Nothing in Labor Code § 2802 provides for the penalties Defendants seek to add.

Moreover, on top of the offensive calculations used above, Defendants again use a 100% violation rate for unpaid reimbursements and place an additional $108,420.00 in controversy. However, nothing in Plaintiff's complaint permits such an egregious violation rate. Indeed, Plaintiff states that Defendants **at times** failed to reimburse employees. *See* Compl., ¶ 17.

As such, Defendants' calculations are speculative, unsupported, and wholly unmeritorious. Thus, Defendants have failed to carry their burden to show $1,285,720 to be in controversy in connection with Plaintiff's claim for unpaid reimbursements.

## G. **Defendants' Attempt to Balloon the Amount in Controversy with Unsubstantiated Attorneys' Fees is Improper and Should be Rejected**

Defendants clearly based their removal papers on a different Plaintiff's pleadings. For instance, Defendants allege that "Plaintiff seeks alleged attorneys' fees…for the First through Tenth claims for relief and under California Labor Code § 2699(g)(1) for the Eleventh Cause of Action." Dkt. #1, ¶ 115. A cursory review of Plaintiff's Complaint shows that Plaintiff has only alleged eight causes of action and further does not include a cause of action in this Complaint under Labor Code § 2699.

20

Notwithstanding these false allegations, Defendants seek to bolster the amount in controversy by stating that the Court must include future attorneys' fees. Defendants contend that Plaintiff's claim for attorneys' fees places $2,086,616.43 in controversy.  Dkt. #1, ¶ 116.  Defendants argue that 25% of the total award is the benchmark in a class action involving a common settlement fund. *Id.* However, the court in *Fritsch v. Swift Transp. Co. of Ariz.,* 899 F.3d 785 (9th Cir. 2018) rejected that argument.  *Id.* at 796.  The court, in pertinent part, stated "we reject Swift's argument that we should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Id.*  It held that "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a *per se rule* for one element of the amount at stake in the underlying litigation." *Id.*; *see also Snow v. Watkins and Shepard Trucking, Inc.,* 2019 WL 1254571, at *4 (C.D. Cal. 2019).

Moreover, although the Ninth Circuit has in some cases calculated 25% of the projected damages as attorneys' fees in wage and hour cases, if the fees are based on a conjectural damages calculation, they should be disregarded.  *See Smith v. Diamond Resorts Management,* 2016 WL 356020, at * 5 (C.D. Cal. 2016) ["because such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee…would necessarily place the amount in controversy over the $5,000,000 CAFA threshold."]; *see also Campbell v. Vitran Express, Inc.*, 2010 WL 4971944, at *4 (C.D. Cal. 2010).

Here, Defendants cannot bolster the amount they claim is out in controversy by relying on a rejected practice that allows it to simply tack on 25% of the purported damages, which in and of itself constitutes exaggerated and unsupported damage and penalty amounts, with speculative future attorneys' fees.  Moreover, as stated at length herein, because Defendants failed to substantiate the damages it sets forth, they cannot justify adding a further conjectural 25% fee on top of already speculative damages.

Furthermore, according to the Supreme Court of the United States itself, legal expenses yet to be incurred on the date a suit begins do not create a "case or controversy" within the meaning of Article III. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) ["[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court…"].   Accordingly, because attorneys' fees do not remedy the injury suffered (*i.e.,* the Labor Code violations), they cannot be used as a basis for removal.   Thus, where Plaintiff's damages, excluding attorneys' fees, did not meet the CAFA amount in controversy requirement Defendants may not include fees to satisfy the amount of controversy in CAFA.

## V.   **REMAND IS WARRANTED BECAUSE DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF THE EIVVDENCE THAT COMPLETE DIVERSITY EXISTS OR THAT THE AMOUNT IN CONTROVERSY UNDER TRADITIONAL DIVERSITY IS SATISFIED**

Defendants' Notice of Removal is additionally based on traditional diversity jurisdiction, codified at 28 U.S.C. § 1441(b).  To establish jurisdiction, Defendants must demonstrate, at a minimum, that complete diversity of citizenship exists between Parties, and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.  Defendants' basis for removal under traditional diversity however, as further set out below, is fatally flawed.

### A. Complete Diversity Between the Parties Does Not Exists

In addition to failing to demonstrate a requisite showing of satisfaction of the amount in controversy as further set out below, Defendants also failed to meet their burden of demonstrating by a preponderance of evidence that complete diversity of citizenship among the parties exists, as required under traditional diversity.  Indeed, under 28 U.S.C. § 1441(b)(2), a civil action may not be removed if any of the parties in interest are a citizen of the State in which such action is brought. *See Mitchell v. John Bean Technologies Corp.*, 2017 WL 4675628, at * 2 (S.D. Cal. 2017) citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)

Here, Defendants do not dispute that South Valley Almond Company ("SVA") is a citizen of California.  Rather, Defendants simply state, without any support or evidence, that SVA was fraudulently joined as a defendant.  However, they fail to include any information regarding fraudulent joinder in their Notice of Removal other than to attach Plaintiff's purported W2 statements.  Such is improper. *See Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) ["a defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden since there is a general presumption against [finding] fraudulent joinder"].   Given the high burden, "if there is even a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper…" *Id.*  The heavy burden is even more difficult to overcome because in deciding whether a defendant is fraudulently joined, the court resolves all disputed facts and ambiguities against the removing party. *See Washington v. Joe's Crab Shack,* 2010 WL 476638 at *2 (N.D. Cal. 2010).

Plaintiff on the other hand has alleged that both Defendants are joint employers. Whether or not SVA is a proper defendant is not appropriately decided here.  Rather, such a determination is subject to discovery, including depositions of the appropriate parties to determine the employment relationship, if any.  This is particularly true as there is clearly a relationship between the two entities given that Plaintiff alleges as so, but both entities also share the same CEO and list the same address for their principal office. Aviles Decl., ¶ 4-6.

Accordingly, without any further information, Defendants have failed to meet their burden thus tipping the scales against fraudulent joinder. As a result, Defendants have not presented any evidence in their removal papers warranting a disregard for what is clear on the face of Plaintiff's Complaint—a lack of complete diversity.

## B. Defendants' Amount in Controversy Does Not Exceed $75,000

### i. Defendants' Calculation of Unpaid Overtime and Minimum Wage is Exaggerated, Unwarranted, Unsupported and Rests on Faulty Assumptions

23

Plaintiff's Complaint alleges that Defendants have, **at times**, failed to pay overtime and minimum wages as a result of, "failing to accurately track and/or pay for **all minutes** actually worked. Complaint, ¶¶ 11, 12.  The Complaint explicitly notes that this was not a daily occurrence but occurred only "at times." *Id*.  Where a complaint contains generalized allegations of illegal behavior, a removing defendant must supply "real evidence" grounding assumptions regarding the rate of statutory violations for purposes of calculating the amount in controversy.  *Ibarra v. Manheim Investments, Inc.,* 755 F.3d at 1199 (9th Cir. 2015).

Defendants nevertheless again mislead this court and contend that Plaintiff alleges he "was not paid all the overtime wages owed to him" and that he "never" received "any" overtime for his bonus. *See* Dkt. #1, ¶ 31.  A review of the Complaint shows that Plaintiff makes no such allegations nor is there any mention of a "bonus." Such blatant misrepresentations should not be entertained, but condemned.

Unsurprisingly, Defendants' calculations are similarly unfounded.  Defendants place $6,857.76 in controversy for Plaintiff's individual overtime claim. Dkt. #1, ¶¶ 36-37.   Additionally, Defendants place $9,141.60 in controversy for Plaintiff's minimum wage claim by alleging that Plaintiff was not paid for 2 hours of alleged work. *Id*., ¶ 39-40.  It is unclear where Defendants find support for 2 hours of alleged unpaid minimum wages because later in their removal papers, Defendants allege that Plaintiff's Complaint seeks 3 hours of unpaid minimum wages per week. *Id.*, ¶ 92.

However, Defendants provide absolutely no support for the whopping 2-hour assumption of unpaid overtime or minimum wages.  Worse, they provide no support for a 100% violation rate, and they cannot given Plaintiff's tempering language of "at times" used throughout the Complaint.  Additionally, as stated above, Defendants' assumptions do not support any amounts attributed to the minimum wage analysis. Defendants have alleged that employees, including Plaintiff, on average worked shifts of 8.83 hours. *Id.*, ¶ 91.  Thus, any unpaid wages would necessarily be counted as part of the overtime amount in controversy.  Defendants cannot claim both.

Moreover, it is entirely unclear why Defendants use Plaintiff's ending rate of pay of $14.65 per hour when that is not what he earned in 2017, 2018, or 2019. Defendants have no excuse for using this rate of pay, particularly as Defendants have purported to produce to Plaintiff all of his wage statements.   Should Defendants persist, Plaintiff can produce exemplars of his paystubs demonstrating that using $14.65 per hour for the statutory period is wholly unwarranted. *See e.g., Smith v. Diamond Resorts Management, Inc.,* 2016 WL 356020, at *3 (C.D. Cal. 2016) [concluding that because the employer had access to employment and payroll records, it was insufficient to assume a violation of even one hour of overtime per week without some facts or evidence to support the assumption].)

Therefore, Defendants have provided no facts to support: (1) any hourly rate; (2) that Plaintiff worked all 156 weeks; and (3) that Plaintiff <u>is requesting 2 hours of unpaid wages per week</u>.   As such, Defendants have not provided the summary judgment-type proof required to carry their burden of proving, by a preponderance of evidence, that $6,857.76 in overtime or $9,570.80 in unpaid minimum wages (or anything close to those numbers) is in controversy for Plaintiff's unpaid overtime and minimum wage claim.   Indeed, no amounts can be attributed to the minimum wage.

### ii.   <u>Defendants' Calculation of Meal & Rest Period Payments Rest on False or Speculative Assumptions and is Thus Unsupported</u>

As stated above, Plaintiff's Complaint alleges that Defendants, **at times**, failed to provide Plaintiff and Class Members with either Meal or Rest Periods. *See* Complaint, ¶¶ 13, 14.

Defendants thus place $6,856.20 (or $13,712.40 total) in controversy for Plaintiff's meal and rest period claims.   Defendants reach this figure by assuming that Plaintiff missed three meal periods and three rest periods every *single* week over the course of his employment. *Id*.   Again, Defendants made a wild and unsupported assumption that Plaintiff worked shifts that merited a meal or rest period every shift. This assumption is simply unsubstantiated.   This is particularly true for meal

25

periods as Defendants contend that Plaintiff suffered 1.5 first meal period violations and 1.5 second meal period violations. Dkt. #1, ¶ 44.[1]   However, Defendants also contend that employees worked an average of 8.83-hour length shifts. *Id.*, ¶¶ 88, 91.   Thus, according to Defendants, no employee, including Plaintiff is even entitled to a second meal period.

Moreover, Plaintiff never alleged meal and rest periods were never provided, nor that he never received premium pay for unprovided meals and rests. Nor did Defendants supply any evidence or other reasonable basis why a missed meal period should be assumed without payment of any premium pay, <u>every single week</u>.   It is a self-serving assumption intended only to grossly exaggerate the amount-in-controversy attributable to this claim, particularly as Plaintiff has alleged that he, on occasion, missed meal and rest periods. A more reasonable violation rate would be one missed meal and rest period per week. *See e.g., Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, *6 (E.D. Cal. 2020) ["courts in this circuit have found that allegations of 'pattern and practice' support a 20% violation rate as reasonable"].)

In sum, Defendants have provided no evidence to support: (1) any hourly rate; (2) that Plaintiff worked 156 weeks in his employment; (3) that Plaintiff missed three meal rest periods every single week; or, most egregiously (4) that Plaintiff was never paid any premium pay for unprovided meal or rest periods.   As such, Defendants have not provided the summary judgment-type proof required to carry its burden of proving, by a preponderance of evidence, that $13,712.40 (or anything close to that number) is in controversy for Plaintiff's meal and rest period claim.

### iii.   <u>Defendants' Calculation of Attorneys' Fees Are Wholly Improper And Used Only To Balloon the Amount in Controversy</u>

---

[1] To the extent Defendants argue that Plaintiff may be entitled to more than 1 meal or rest period premium payment per day, Defendants are wrong. *See United Parcel Service Wage & Hour Cases*, 196 Cal.App.4th 57, 69 (2011) [Section 226.7 permits up to two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods].

Defendants provide absolutely no evidence to support the inclusion of any attorneys' fees, much less sufficient evidence to overcome the "strong presumption against removal" premised on traditional diversity. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).   Defendants instead provide anecdotal cases and essentially argue that every single individual wage-and-hour lawsuit will necessarily incur $75,000 in attorneys' fees. Dkt. #1, ¶ 61.  This cannot be, particularly as Defendants have not included any information that would support any number of attorney hours, attorney rates, or any calculation of how many hours Plaintiff's counsel would potentially expend in an individual wage-and-hour case.

Instead, while Plaintiff does not agree that Defendants are entitled as a per se rule to attribute a flat percentage of the total amounts in controversy, Courts have applied a 25% benchmark to calculate attorneys' fees. *See Fritsch v. Swift Transp. Co. of Ariz.,* 899 F.3d 785 (9th Cir. 2018).  However, Courts still require parties to prove the amount of attorneys' fees at stake by a preponderance of the evidence. *Id.* This is because amounts in controversy based on speculation and conjecture cannot be used to meet Defendants' burden to prove the amount in controversy. *See Jones v. ADT Sec. Services, Inc.,* 2012 WL 12744, at *6 (C.D. Cal. 2012).

Here, it is Plaintiff's position that Defendants' $33,830.30 is already an inflated number based on speculation and conjecture.  Nevertheless, even if we were to use this number and applied the 25% attorneys' fees benchmark, this would only add $8,457.575 in attorneys' fees, bringing the total to $42,287.87.  This is far below the $75,000 threshold necessary.

## VI.   CONCLUSION

Because the Defendants' removal of this action was improper, Plaintiff respectfully requests this Court to grant this Motion and remand the action back to the California state court in which it was filed.

NOTICE AND MOTION TO REMAND; MEMO. OF P'S & A'S.

Dated:  April 29, 2021                    BIBIYAN LAW GROUP, P.C.


                                          */s/ Diego Aviles*
                                          DIEGO AVILES
                                     Attorneys for Plaintiff ALVARO LOPEZ
                                     CABRERA GUZMAN, on behalf of himself
                                     and all others similarly situated

NOTICE AND MOTION TO REMAND; MEMO. OF P'S & A'S.

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 8484 Wilshire Blvd., Suite 500, Beverly Hills, California 90021.

On May 31, 2021, I served the following document(s) described as **PLAINTIFF'S MOTION FOR REMAND; DECLARATION OF DIEGO AVILES IN SUPPORT THEREOF;** on

Richard D. Marca
Christopher S. Milligan
Robert A. Escalante
VARNER & BRANDT LLP
3750 University Avenue, Suite 610
Riverside, California 92501

**Counsel for Defendants**

The above document(s) were served on the interested parties in this action as follows:

*All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the above-reference case number.*

BY ELECTRONIC MAIL:  As follows:  I am readily familiar with our office's practice of electronic mail transmission; on this date the document enumerated above was transmitted by electronic mail transmission and that the transmission was reported as complete and delivered, and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 31, 2021 at Beverly Hills, California.

*/s/ Diego Aviles*
Diego Aviles

NOTICE AND MOTION TO REMAND; MEMO. OF P'S & A'S.