**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALVARO LOPEZ CABRERA, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>SOUTH VALLEY ALMOND COMPANY, LLC, a California limited liability company; AGRESERVES, INC., a Utah corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | Case No. 1:21-CV-00748-AWI-JLT<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. No. 8) |

Plaintiff Alvaro Lopez Cabrera ("Plaintiff") moves to remand this putative wage and hour class action to Kern County Superior Court. Doc. No. 4. For the reasons set forth below, the motion will be denied.

**BACKGROUND**

Plaintiff, a California resident, filed this putative class action against South Valley Almond Company, LLC ("South Valley"), a California limited liability company, and AgReserves, Inc. ("AgReserves" and together with South Valley, "Defendants"), a Utah corporation, in Kern County Superior Court on April 1, 2021. Doc. No. 1-1 at 2, 3:5-11 & 3:14.[1]

As alleged in the Complaint, Plaintiff worked for Defendants in California as a non-exempt employee approximately from July 2012 through April 2020. Doc. No. 1-1 at 3:17-19. His

---

[1] Unless otherwise indicated, all citations to page numbers in documents filed with the Court electronically are to the page number in the CM/ECF stamp at the top of each page.

duties "included, but were not limited to, harvesting, piling, and cleaning almonds as well as tractor driving, irrigating, machine maintenance, and general labor." Id. at 3:14-17. The Complaint recites claims "on behalf of Plaintiff and all other current and former non-exempt California employees employed by or formerly employed by Defendants" for (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal breaks or payment in lieu thereof; (4) failure to provide rest breaks or payment in lieu thereof; (5) waiting time penalties for failure to timely pay all wages earned and due upon discontinuation of employment; (6) failure to issue accurate wage statements; (7) failure to indemnify for business expenses; and (8) unfair competition in violation of section 17200 of the California Business and Professions Code. Id. at 10:9-18:26.

AgReserves removed the action to this Court on May 7, 2021, Doc. No. 1, and Plaintiff filed a motion to remand on May 31, 2021.[2] Doc. No. 8.

## **LEGAL FRAMEWORK**

Under 28 U.S.C. § 1441, "[a] defendant generally may remove an action filed in state court if a federal district court would have had original jurisdiction over the action." Chavez v. JPMorgan Chase & Co, 888 F.3d 413, 415-16 (9th Cir. 2018) (citing 28 U.S.C. § 1441(a) and Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)). Congress enacted the Class Action Fairness Act ("CAFA") "to permit a defendant to remove certain class or mass actions into federal court." Ibarra v. Manheim Inv., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citing 28 U.S.C. § 1197). Under CAFA, district courts have original jurisdiction over class actions when there are at least 100 class members, minimal diversity (at least one plaintiff is diverse in citizenship from any defendant), and more than $5 million in controversy, exclusive of interest and costs. Id. at 1195, 1197 (citing 28 U.S.C. § 1332(d)).

In a notice of removal based on CAFA, a defendant need only plausibly allege that the

---

[2] AgReserves states that it does business as "South Valley Farms" and that South Valley Almond Company, LLC is a distinct legal entity that was improperly joined in this action as a "sham defendant" to thwart removal based on traditional diversity jurisdiction. Doc. No. 1 at 2:1-2, 4:3-8. On May 7, 2021, South Valley Almond Company, LLC filed a notice of consent to removal, Doc. No. 5, and AgReserves does not argue traditional diversity jurisdiction as grounds for removal in its opposition to Plaintiff's remand motion. Consequently, this order does not address the question of whether South Valley Almond Company, LLC is properly named as a defendant in this case.

2

amount in controversy exceeds $5 million. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). If the plaintiff contests those allegations in a motion to remand, however, "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 88-89.

The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional minimum. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (citation omitted). A removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages," Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1174 (E.D. Cal. 2018) (quoting Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1147–48 (C.D. Cal. 2010)), but a defendant must set forth the "underlying facts supporting its assertion that the amount in controversy exceeds [the statutory minimum]." Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Further, where a defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Ibarra, 775 F.3d at 1199.

The Ninth Circuit has "defined the amount in controversy as the 'amount at stake in the underlying litigation.' " Gonzales, 840 F.3d at 648–49 (quoting Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005)). "[T]his includes any result of the litigation, excluding interest[] and costs, that 'entail[s] a payment' by the defendant," id. (quoting Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007)), such that, *inter alia*, "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes" are all properly included in amount-in-controversy calculations. Id. (citing Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)).

In other words, the amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." Arias v. Residence Inn by

3

Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis original); see Chavez, 888 F.3d at 417 (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them").

"In assessing the amount in controversy, [courts] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy," Chavez, 888 F.3d at 416 (citation omitted), including "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)). "If a defendant fails to meet the requisite burden of proof, a court must remand for lack of subject matter jurisdiction." Armstrong v. Ruan Transp. Corp., 2016 WL 6267931, at *2 (C.D. Cal. Oct. 25, 2016); see also, Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003).

## PLAINTIFF'S MOTION TO REMAND

Plaintiff argues that the CAFA amount-in-controversy estimate set forth in AgReserves's notice of removal is not properly supported by evidence as to the size of the putative class, hourly rates of pay or the number of workweeks worked by putative class members. Doc. No. 8 at 8:4-11. Further, Plaintiff argues that AgReserves relies on "bare, baseless and wildly exaggerated assumptions" with respect to the frequency and nature of alleged violations. Id. at 8:12-15. For example, Plaintiff contends that it is improper to assume a "100% violation rate for overtime and that all putative class members are owed a full two hours of overtime per week." Id. at 8:17-18. In addition, Plaintiff contends that AgReserves fails to show more than $75,000 in controversy on Plaintiff's individual claims, as required for removal based on traditional diversity jurisdiction under 28 U.S.C. § 1332(a), and that both the complete diversity required for § 1332(a) removal and the minimal diversity required for CAFA removal are lacking. Id. at 9:8-16.

*AgReserves's Opposition*

AgReserves's opposition focuses solely on CAFA removal and is based almost entirely on an expert declaration prepared by Joseph A. Krock, Ph.D. (the "Krock Declaration"). See Doc. Nos. 12 & 12-3.

4

1    AgReserves provided Dr. Krock with Bi-Weekly Payroll Data, Time Data, and a list of its
2    "exempt" employees. Doc. No. 12-3 at 4:6, 10-12. Dr. Krock identified members of the putative
3    class—which he characterized as "non-exempt California employees of AgReserves"—by
4    "limiting the analysis to Process Levels[3] 215 ('ARI-Deseret Farms of California') and 277 ('ARI-
5    South Valley Farms')" and "excluding all employees identified as exempt by AgReserves." Id. at
6    5:17-22. Bi-Weekly Payroll Data contained information such as "employee IDs, name, process
7    level, pay codes, hours worked, amounts paid, and check dates" for 1,120 employees over 34,558
8    bi-weekly pay periods ending January 10, 2016 through April 25, 2021. Id. at 5:24-6:5. Based on
9    this Bi-Weekly Payroll Data, Dr. Krock identified 944 putative class members who worked 25,911
10   bi-weekly pay periods from April 5, 2017 through April 25, 2021. Id. at 6:1-2. Time Data
11   contained information such as "employee IDs, names, Process Levels, punch times, and punch
12   dates" for 1,052 employees working 327,232 shifts over 31,066 bi-weekly pay periods from April
13   3, 2017 through June 7, 2021. Id. at 6:10-16. Based on Time Data, Dr. Krock identified 972
14   putative class members who worked 304,642 shifts over 28,637 bi-weekly pay periods between
15   April 5, 2017 and June 7, 2021. Id. at 6:12-16.

16    Dr. Krock states that he was able to "analyze data for 929 putative class members who
17   worked 309,193 shifts across 29,019 bi-weekly pay periods" from April 5, 2017 through June 7,
18   2021 by combining Bi-Weekly Payroll Data with Time Data and that he "only included employees
19   with at least one pay period with both time and payroll data" in his analysis. Doc. No. 12-3 at
20   6:19-22. Further, Dr. Krock identified 554 putative class members whose employment with
21   AgReserves was discontinued—voluntarily or involuntarily—from April 5, 2018 through June 7,
22   2021, by assuming that any putative class member who did not record time in the 42 days prior to
23   June 7, 2021 was no longer in AgReserves's employ. Id. at 6:24-7:11.

24    Using this information—as well as assumptions as to violation rates furnished by
25   AgReserves—Dr. Krock estimates the amount in controversy on class claims as $8,309,983.39,
26   excluding potential recovery on the business expense indemnification claim:

27

28   [3] The Court takes the term "process level" to refer to something along the lines of a worksite.

5

**ALVARO LOPEZ CABRERA v. AGRESERVES**
**POTENTIAL EXPOSURE**
**APRIL 5, 2017 - JUNE 7, 2021**

| Category | Count | Potential Exposure |
|---|---|---|
| 1. Class Members | 929 | |
| 2. Alleged Meal Period Premiums Owed | 60,268 | $ 762,585.51 |
| 3. Alleged Rest Period Premiums Owed | 61,506 | $ 777,900.89 |
| 4. Alleged Unpaid Overtime Wages Owed | 56,534 | $ 1,076,562.32 |
| 5. Alleged Unpaid Minimum Wages Owed | 56,534 | $ 671,322.00 |
| 6. Liquidated Damages | | $ 671,322.00 |
| 7. Alleged Waiting Time Penalties Owed | 554 | $ 1,930,344.00 |
| 8. Alleged Wage Statement Penalties Owed | 7,824 | $ 757,950.00 |
| 9. Total Before Attorney's Fees | | $ 6,647,986.72 |
| 10. Grand Total | | $ 8,309,983.39 |

Doc. No. 12-3 at 11:6-15.

*Plaintiff' Reply*

On reply, Plaintiff raises various objections to the Krock Declaration, see Doc. No. 13-1, while arguing that AgReserves improperly expanded the putative class by counting employees from a worksite at which Plaintiff was not employed and improperly used post-removal data in its amount-in-controversy calculations. See Doc. No. 13 at 4:1-4. Further, Plaintiff argues that AgReserves fails to show that the $5 million threshold for CAFA removal has been exceeded because it applies violation rates that are not supported by evidence or allegations in the Complaint, see, e.g., id. at 4:13-22, and improperly includes both unpaid overtime wages and unpaid minimum wages in its amount-in-controversy calculation. Id. at 5:1-10. Finally, Plaintiff argues that AgReserves has waived any argument that the $75,000 threshold for removal based on traditional diversity jurisdiction has been satisfied because it failed to address that issue in its opposition brief. Id. at 10:26-11:12.

## DISCUSSION

The Court will first address Plaintiff's objections to the Krock Declaration and then turn to

6

the amount-in-controversy calculations for each of the claims addressed in the opposition.

I.      **Objections to the Krock Declaration**

Plaintiff objects to various portions of the Krock Declaration on the grounds that they lack foundation, involve improper expert testimony or constitute legal conclusions.[4] See Doc. No. 13-1. Further, Plaintiff asserts that Dr. Krock's use of a "42-day threshold to determine the number of terminated" employees constitutes "speculation"; that including employees from Deseret Farms in amount-in-controversy calculations is improper because Deseret Farms "appears to be a separate entity from AgReserves"; and that Dr. Krock improperly inflates the amount in controversy by including "time and payroll data … which was not available at the time of removal." Id. at 3:25-4:6.

Plaintiff's boilerplate objections as to legal conclusions and improper expert testimony—which Plaintiff makes no attempt to justify—are categorically overruled for lack of support. Cf. Cengage Learning, Inc. v. Davis Textbooks, 2016 WL 8730880, at *2 (E.D. Cal. Sept. 16, 2016) (overruling "boilerplate" discovery objections "as inadequately supported"). In any event, Dr. Krock's analysis of AgReserves's business records is the type of analysis that courts routinely rely on experts to provide, and there is nothing of consequence in the Krock Declaration that strikes the Court as a "legal conclusion." See, e.g., Marez v. Bassett, 2011 WL 13213813, at *3 (C.D. Cal. Oct. 3, 2011) (finding that expert analysis of business records was admissible and did not constitute legal conclusions); see also Fed. R. Civ. P. Rule 702. The speculation objection is overruled because it is reasonable, in the Court's view, to assume that employment has been discontinued where an employee has gone six weeks without entering time and Dr. Krock states that he has empirically confirmed that his methodology (which he has applied in scores of similar cases) is reliable. See Ibarra, 775 F.3d at 1197, 1199 (allowing assumptions with "some reasonable ground underlying them" in amount-in-controversy calculations).

The objections as to lack of foundation and the inclusion of Deseret Farms employees in

---

[4] The Court does not address objections raised under the California Evidence Code. See Okada v. Whitehead, 759 F. App'x 603, 605 (9th Cir. 2019) (stating that the Federal Rules of Evidence govern the admissibility of evidence in federal court in diversity cases arising under California law).

7

the putative class are somewhat weightier in that no AgReserves employee has authenticated the business records furnished to Dr. Krock or provided a declaration stating that Deseret Farms is an AgReserve worksite. There is no requirement, however, that evidence be in admissible form on a motion to remand, so long as it is reliable and relevant and could be made admissible at trial. See Darrough v. SOC LLC, 2021 WL 725159, at *1 (D. Nev. Jan. 28, 2021) (citing Fraser v. Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003)); cf. Santos v. TWC Admin. LLC, 2014 WL 12558009, at *2–3 (C.D. Cal. Aug. 4, 2014) (stating that "courts are permitted to consider inadmissible evidence at the class certification stage"); Keilholtz v. Lennox Hearth Products Inc., 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims. Therefore, the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial."). Here, Plaintiff purports to bring claims on behalf of all of Defendants' California employees, not just employees at his worksite, Doc. No. 1-1 at 3:10-11, and although the notice of removal focuses solely on Plaintiff's worksite, it also states that AgReserves has two worksites operating "under separate fictitious business names" in California. Doc. No. 1 at 14:26-15:2. Plaintiff makes no showing to the contrary and the Court has no reason to doubt, based on information currently available, that the business records furnished to Dr. Krock by AgReserves are reliable as to the scope of AgReserves's operations and the size of its employee population. Plaintiff's objections are therefore overruled.

Finally, Plaintiff is correct that removal determinations must be based on the amount in controversy at the time of removal, see Chavez, 888 F.3d at 417–18 ("the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails"), but the Court finds that the small amount of post-removal data in question here (approximately one month of data in one of two data sets spanning more than four years) does not preclude a finding as to the amount in controversy under the applicable preponderance of the evidence standard, particularly since minor, common sense adjustments can be made, as necessary, to offset the effects of post-removal data.

//

## II.   Amount-in-Controversy Calculations

### A. Meal Break and Rest Break Claims

Plaintiff seeks recovery under section 226.7 of the California Labor Code for unpaid premiums for noncompliant meal breaks and noncompliant rest breaks. Doc. No. 1-1 ¶¶ 43-50.

Section 512, subdivision (a), of the Labor Code states:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Labor Code § 512, subd. (a); see also, Cal. Code Regs., tit. 8, § 11010(11). California Industrial Welfare Commission ("IWC") Wage Order No. 1-2001 provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and must amount to "ten ... minutes net rest time per four ... hours worked or major fraction thereof." See Cal. Code Regs., tit. 8, § 11010(12)(A). Section 226.7, subdivision (c), of the Labor Code provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Lab. Code § 226.7, subd. (c).

As to the meal break claims, Plaintiff alleges that for "four [] years[5] prior to the filing of

---

[5] AgReserves contends that Plaintiff seeks recovery of payments for meal break and rest break violations for "up to four years preceding the filing of the Complaint" under, *inter alia*, section 17208 of the Business and Professions Code. Doc. No. 12 at 11:25-27, 16:9-11. In *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, this Court held (as numerous other courts have) that claims under section 226.7 are subject to the three-year statute of limitations in section 338, subd. (a), of the California Code of Civil Procedure. 2021 WL 431402, at *1 (E.D. Cal. Feb. 8, 2021). Plaintiff does not dispute, however, that he is seeking payments going back four years prior to the filing of this action and the Court does not disagree with AgReserves's reading of the Complaint. The Court will therefore allow for exposure estimates dating back to April 5, 2017, to the extent they are otherwise creditable. See Greene v. Harley-

the Complaint … through the present, Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty free uninterrupted meal periods every five hours of working without waiving the right to take them …." Doc. No. 1-1 ¶ 47. Further, Plaintiff alleges that "at times, Defendants failed to provide one [] additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods"; that Defendants "willfully" engaged in such conduct with respect to meal periods; and that "Plaintiff and Class members have suffered damages … to the extent they were not paid additional pay owed for missed, untimely, interrupted, incomplete and/or on-duty meal periods." Id. ¶¶ 47-49.

As to the rest break claim, Plaintiff alleges that "for four [] years prior to the filing of the Complaint … through the present, Plaintiff and Class Members were, at times, not authorized or permitted to take complete, timely [10]-minute, duty-free uninterrupted rest periods every four [] hours of work or major fraction thereof." Doc. No. 1-1 ¶ 55. Further, Plaintiff alleges that Defendants "at times" failed to provide "one [] additional hour of pay at the employee's regular rate of compensation for [] unprovided rest periods"; that Defendants "willfully" engaged in "unlawful conduct" with respect to rest periods; and that "Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant [rest] periods." Id. ¶¶ 56-58.

AgReserves estimates the amount in controversy for the meal break claim to be $762,585.51 and the amount in controversy for the rest break claim to be $777,900.89. Doc. No. 12 at 12:1-3. Dr. Krock identified 299,442 shifts in which putative class members were eligible for at least one meal break (i.e., shifts of five hours or more) and 305,695 shifts in which putative class members were eligible for at least one rest break (i.e. shifts of 3.5 hours or more) during the period of approximately four years from April 5, 2017 through June 7, 2021. Id. at 12:6-7. He then assumed a 20% violation rate as to meal breaks and a 20% violation rate as to rest breaks, such

---

Davidson, Inc., 965 F.3d 767, 774 (9th Cir. 2020) (finding that the district court erred in considering the merits of a statute of limitations defense in determining the amount in controversy).

10

1 that every fifth meal break and every fifth rest break was noncompliant in some fashion and
2 uncompensated. Id. at 12:6-10. Using that methodology, Dr. Krock estimated 60,268 instances of
3 unpaid meal break premiums and 61,506 instances of unpaid rest break premiums. Id. at 12:12-13.
4 Finally, Dr. Krock "calculated and aggregated these missed premiums by applying, for each
5 premium in dispute, one hour of pay at the lowest hourly rate earned by the relevant employee,"
6 for a total amount in controversy on the meal break claims and the rest break claims of
7 $1,540,486.40. Id. at 12:14-18 (emphasis original).

8       Plaintiff contends that this estimate cannot be credited because Dr. Krock fails to specify
9 "what rate of pay" was used in his calculations. Doc. No. 13 at 6:7-9. This argument is without
10 merit, however, because Dr. Krock states that he used the "lowest hourly rate" of pay for each
11 employee. Doc. No. 12-3 at 8:2-3 (emphasis original).

12       Plaintiff next argues that the 20% violation rate is too high. Doc. No. 13 at 6:7-16. In the
13 Court's view, however, assuming that a violation occurred in connection with one out of five
14 breaks is consistent with language in the Complaint stating that violations occurred "at times," see
15 Nunes v. Home Depot U.S.A., Inc., 2019 WL 4316903, at *2 (E.D. Cal. 2019) (finding a 20%
16 violation rate reasonable where complaint alleged defendants caused class members to forfeit meal
17 breaks without compensation "from time-to-time"), particularly since the Complaint seeks
18 payment in connection with all forms of break-related violations (missed, delayed, interrupted or
19 incomplete) and Plaintiff provides no alternative violation rate based on his eight years of
20 experience as an AgReserves employee. See Lopez v. Adesa, Inc., 2019 WL 4235201, at *3 (C.D.
21 Cal. Sept. 6, 2019) ("[W]hile not required, Plaintiff has not offered any better estimate of the
22 alleged violation rate, despite the fact that she most likely knows at least roughly how often she
23 was not afforded the required meal breaks."). Further, other district courts routinely assume a 20%
24 violation rate for meal and rest break claims where no evidence as to the frequency of violations is
25 presented, see Mendoza v. Savage Servs. Corp., 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19,
26 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply
27 a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest
28 period premiums."), and the Court notes that Plaintiff himself essentially calls for applying a 20%

violation rate in his opening brief. See Doc. No. 18 at 17:11-12 ("Thus, a more reasonable calculation would use a 20% violation rate (i.e., one meal period per week))."

Finally, Plaintiff contends that AgReserves's "numbers are internally inconsistent" because 20% of 299,442 is 59,889 (not 60,268, as stated in the Krock Declaration) and 20% of 305,695 is 61,139 (not 61,506, as stated in the Krock Declaration). These minor computational errors, however, can easily be corrected and do not undercut the integrity of Dr. Krock's analysis. As noted above, Dr. Krock estimates $762,585.51 in unpaid premiums for 60,268 noncompliant meal breaks in the 50-month period from April 5, 2017 to June 7, 2021. Adjusting this number downward to eliminate data from the one-month post-removal period between May 7, 2021 and June 7, 2021 and to correct Dr. Krock's computational error as to the number of meal breaks results in estimated exposure of $742,634.13 ($762,585.51 x (49/50) x (59,889/60,268)). Similarly, Dr. Krock estimates $777,900.89 in unpaid premiums for 61,506 noncompliant rest breaks in the period from April 5, 2017 to June 7, 2021. Adjusting this number downward to eliminate data from the month from May 7, 2021 and June 7, 2021 and to correct Dr. Krock's computational error as to the number of meal breaks results in an estimate of $757,794.05 ($777,900.89 x (49/50) x (61,139 /61,506)). Thus, the Court will apply $1,500,428.18 in estimated exposure on the meal break and rest break claims to the amount in controversy for purposes of determining CAFA jurisdiction.

**B. Overtime and Minimum Wage Claims**

Plaintiff seeks recovery of unpaid overtime wages and unpaid minimum wages under IWC Order 5-2001 and sections 510, 1194, 1194.2 of the Labor Code. Doc. No. 1-1 ¶¶ 30-42.

Section 510, subdivision (a), of the Labor Code states as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

12

1  Cal. Lab. Code § 510, subd. (a); see also Cal. Code Regs. tit. 8, § 11050(3)(A).

2       Section 1194 provides that "any employee receiving less than the legal minimum wage or
3  the legal overtime compensation applicable to the employee is entitled to recover in a civil action
4  the unpaid balance of the full amount of this minimum wage or overtime compensation, including
5  interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194. Further,
6  section 1194.2 provides that in actions under section 1194 to recover unpaid minimum wages, "an
7  employee shall be entitled to recover liquidated damages in an amount equal to the [minimum]
8  wages unlawfully unpaid and interest thereon."[6] Id. § 1194.2.

9       As to unpaid overtime wages, Plaintiff alleges:

> Four [] years[7] prior to the filing of the Complaint … through the present, Plaintiff and Class Members, at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants failing to accurately track and/or pay for all minutes actually worked at the proper overtime rate of pay to the detriment of Plaintiff and Class Members.

14  Doc. No. 1-1 ¶ 34.

15       As to unpaid minimum wages, Plaintiff alleges that "[f]or four [] years prior to the filing of
16  the Complaint in this Action through the present, Defendants failed, at times, to accurately track
17  and/or pay for all hours actually worked at their regular rate of pay that is above the minimum
18  wage to the detriment of Plaintiff and Class Members." Id. ¶ 40.

19       Dr. Krock identified 56,534 workweeks between April 5, 2017 and June 7, 2021. He
20  assumed one hour of unpaid overtime and one hour of unpaid minimum wage per putative class
21  member for each workweek, and calculated the total exposure for overtime and minimum wage
22  claims in the amount of $2,419,206.32 by summing: (1) each putative class member's missing
23  overtime hours multiplied by 1.5 times their lowest respective hourly rate ($1,076,562.32); (2)

---

[6] Section 1194.2 does not provide liquidated damages for unpaid overtime wages. See Cal. Lab. Code § 1194.2.
[7] As with his meal break and rest break claims, it appears Plaintiff is seeking recovery of a fourth year of unpaid overtime and unpaid minimum wages under section 17208 of the Business and Professions Code. See Doc. No. 1-1 ¶ 85; Doc. No. 12 16:9-11. The Court will therefore allow for exposure estimates based on four years of liability, even though it appears the three-year statute of limitations in section 338, subd. (a), of the California Code of Civil Procedure applies to claims under section 1194 of the Labor Code. See supra n.3; Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1119 (C.D. Cal. 2010).

each putative class member's missing minimum wage hours multiplied by the applicable minimum wage ($671,322.00), and (3) liquidated damages in an amount equal to the unpaid minimum wages ($671,322.00). Doc. No. 12 at 17:16-21.

Plaintiff argues that AgReserves improperly uses a "100% violation rate" in assuming that each member of the putative class is owed one hour of overtime and one hour of unpaid minimum wage per week and that given the "limiting language of 'at times' used throughout the Complaint," the assumed violation rate for both the overtime claims and the minimum wage claims should be reduced to 20%. Doc. No. 13 at 4:23-26, 5:19-24. Further, Plaintiff contends that AgReserves failed to address his argument that unpaid overtime and unpaid minimum wages are mutually exclusive, id. at 5:1-10, and that, in any event, nothing should be included in the amount in controversy for the minimum wage claim because the Krock Declaration does not address shift length. Id. at 5:11-18.

As an initial matter, the Court does not agree with Plaintiff's contention that it is improper to assume that all putative class members employed during the relevant time period were subject to unpaid overtime and unpaid minimum wages. The Complaint does not allege subclasses (or otherwise draw relevant distinctions as to the posture of different members of the putative class) and states that the violations at issue were due to "policies and/or practices" on the part of AgReserves. Doc. No. 1-1 ¶ 28. In addition, the Complaint allows for recovery of overtime and minimum wages by all putative class members, see id. ¶ 36 ("Plaintiff and Class Members have been deprived of overtime wages …"), ¶ 42 ("Plaintiff and Class Members are entitled to recover the full amount of unpaid minimum wages."), and provides no basis for inferring that some meaningful subset of the putative class was not subject to overtime or minimum wage violations. It therefore strikes the Court as reasonable to apply the same violation rate to all putative class members.

Further, the Court finds that AgReserves's assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred "at times" and "on occasion," particularly since the Complaint alleges that the Labor Code violations at issue in this case are due to "policies and/or practices" on the part of

14

Defendants, see Lopez v. Adidas Am., Inc., 2021 WL 927265, at *2 (C.D. Cal. Mar. 11, 2021) ("The unsupported averment that violations occurred 'from time to time' does not cancel the Complaint's otherwise systemic class allegations, let alone does it warrant remand based on insufficient damages."), and Plaintiff fails to make any showing that a different violation rate should apply, despite his eight years of employment with AgReserves. The Court also notes that these assumptions are in line with the violation rates applied by other district courts on remand motions involving claims for unpaid wages. See Mendoza, 2019 WL 1260629 at *2–3 ("When a 100% violation rate is not supported by a factual or evidentiary basis, courts in this district have found that a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable.").

Finally, AgReserves does, in fact, address Plaintiff's argument that unpaid overtime and unpaid minimum wages are mutually exclusive, see Doc. No. 12 at 18:9-14, and the Court agrees with AgReserves that both overtime and minimum wages can properly be included in the amount in controversy, since they are "separate types of damages," see Lucas v. Michael Kors (USA), Inc., 2018 WL 2146403, at *8 (C.D. Cal. May 9, 2018) ("the unpaid minimum and overtime wages appear to be separate types of damages that can be factored into the amount in controversy"), and courts must assume, in estimating amounts in controversy, that plaintiffs will prevail on their claims as pleaded. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); Meredith v. e-MDs, 2014 WL 2612112, at *3 (E.D. Cal. June 11, 2014) ("Of course, for purposes of determining the amount in controversy, the Court must assume that Plaintiff will prevail on all of his claims ….").

The Court will therefore apply AgReserves's overtime and minimum wage estimates to the CAFA amount in controversy, with a reduction for the period of one month post-dating the May 7, 2021 removal of this action, such that $1,055,031.07 ($1,076,562.32 x (49/50)) will be applied for unpaid overtime; $657,895.56 ($671,322.00 x (49/50)) will be applied for unpaid minimum wages; and $657,895.56 will be applied as liquidated damages for unpaid minimum wages, for a total of $2,370,822.19.

**C. Waiting Time Claims**

Plaintiff seeks statutory penalties under sections 201, 202 and 203 of the Labor Code for failure to pay all earned and unpaid wages in a timely manner at the end of employment. Doc. No. 1-1 ¶¶ 59-66.

Section 201 of the Labor Code provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. Section 202 of the Labor Code provides that "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter …." Cal. Lab. Code § 202. Section 203 of the Labor Code provides that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203. The statute of limitations for waiting time penalties is three years. Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1398 (2010).

Plaintiff alleges that "in the three [] years before the filing of the Complaint in this Action through the present," Defendants willfully "failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." Doc. No. 1-1 at 15:4-15.

Dr. Krock states that the employment of 554 putative class members came to an end from April 5, 2018 through June 7, 2021, based on his assumption that putative class members who did not record time in the 42 days prior to June 7, 2021 no longer work for AgReserves. Doc. No. 12-3 ¶ 36. For each putative class member, Dr. Krock calculated "30 days wages" by multiplying the putative class member's final wage rate by 8 hours a day and 30 days. Id. Dr. Krock then summed those calculations for an estimated $1,930,344.00 in total waiting time penalties. Id. ¶ 37.

Plaintiff contends that the 100% violation rate applied by AgReserves for waiting time penalties "does not have any backing in fact or in the Complaint" because the Complaint merely alleges that Defendants "at times" failed to pay full wages to "some" employees and the claim is predicated solely on an alleged failure to pay overtime. Doc. No. 13 at 7:15-8:11. Further, Plaintiff

16

asserts that AgReserves has not shown that penalties should be based on 30 eight-hour workdays across the board. Id. at 8:12-19.

The Court found above that it was reasonable to assume that all members of the putative class were subject to overtime violations and further notes that the recitation of the waiting time claim expressly incorporates allegations as to multiple types of Labor Code violations. See Doc. No. 1-1 ¶ 59. Thus, the Court finds it is reasonable to assume (on either basis) that final paychecks for all separated employees violated section 201 or section 202. See Nunes, 2019 WL 4316903 at *3 ("Given the allegations, it is reasonable to assume the terminated class members suffered at least one violation … and were therefore not paid all wages owed upon termination."). AgReserves has not, however, made an adequate showing as to the number of putative class members who separated from AgReserves during the period in question. Dr. Krock states that the Bi-Weekly Payroll Data and Time Data he was provided did not contain termination dates and that he therefore assumed any employee who had not recorded time in the 42-day period prior to June 7, 2021 had been terminated. Even assuming this methodology is valid, however, the cut-off should have been 42 days prior to May 7, 2021 to reflect the number of putative class members who had been terminated as of the removal date. Further, the Court agrees with Plaintiff that, despite having access to Bi-Weekly Payroll Data and Time Data, Dr. Krock has not shown that his assumption of an eight-hour workday is valid. In fact, data set forth by Dr. Krock in connection with the meal break and rest break claims shows some shifts of less than five hours. The Court therefore will not credit any amount for waiting time penalties to the CAFA amount in controversy. See Mook v. Regis Corporation, 2009 WL 10672049, at * 4 (S.D. Cal. 2009).

**D. Failure to Provide Accurate Wage Statements**

Plaintiff seeks damages and statutory penalties under section 226 of the Labor Code for failure to provide complete and accurate itemized wage statements.

Section 226, subdivision (a), of the Labor Code provides that every "employer ... shall furnish to his or her employee ... an accurate itemized statement" of wages earned. Cal. Lab. Code § 226, subd. (a). Under Labor Code section 226, subdivision (e)(1), if the employer knowingly and intentionally fails to provide its employees with accurate itemized wages statements, the employee

1 is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay
2 period in which a violation occurs and one hundred dollars ($100) per employee for each violation
3 in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000),"
4 as well as costs and reasonable attorneys' fees. Cal. Lab. Code § 226, subd. (e)(1). The statute of
5 limitations for recovery of penalties (as opposed to damages) under subdivision (e)(1) of section
6 226 is one year. See Novoa v. Charter Commc'ns, LLC, 100 F. Supp. 3d 1013, 1025 (E.D. Cal.
7 2015) (Ishii, J.); Cal. Code. Civ. Proc. § 340, subd. (a).

8    Plaintiff alleges that "that in the one [] year before the filing of the Complaint in this
9 Action through the present, Defendants failed to comply with Labor Code section 226, subdivision
10 (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and
11 Class Members with accurate itemized statements that accurately reflect, among other things,
12 gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect
13 during the pay period and the corresponding number of hours worked at each hourly rate; among
14 other things." Doc. No. 1-1 ¶ 70. Further, Plaintiff alleges that "Defendants had the ability to
15 provide Plaintiff and the other Class Members with accurate wage statements, but, at times,
16 willfully provided wage statements that Defendants knew were not accurate." Id. ¶ 71.

17    Dr. Krock states that 7,824 wage statements were provided to 489 putative class members
18 in the period from April 5, 2020 through June 7, 2021, and estimates $757,950 in wage statement
19 penalties, applying $50 penalty for the first pay period and a $100 penalty for each subsequent pay
20 period, subject to a $4,000 cap, for each putative class member. Doc. No. 12-3 ¶¶ 38-40.

21    Plaintiff argues that AgReserves lacks support for a 100% violation rate and that it is
22 improper to apply a $100 penalty for "subsequent" wage statement violations without showing
23 that AgReserves was on notice of wage statement defects. Doc. No. 13 at 8:21-9:13. Further, Dr.
24 Krock's calculations include penalties for wage statements that were not issued until after the date
25 of removal. Id. at 9:22-25.

26    The Court found above that it is reasonable to assume one overtime violation, one
27 minimum wage violation, one meal break violation and one rest period violation per week for each
28 putative class member. It follows that each of the bi-weekly wage statements Defendants issued to

18

1  putative class members during the period in question contained an error of some sort. Cf. Nunes,
2  2019 WL 4316903 at *3. Further, the Complaint alleges that Defendants' failure to provide
3  accurate wage statements "was knowing, intentional, and willful" and that Defendants "willfully
4  provided wage statements that Defendants knew were not accurate." Doc. No. 1-1 at 16:17-20.
5  The Court therefore finds it is reasonable to include $100 penalties for "subsequent" violations,
6  even assuming there is legal merit to Plaintiff's contention that the $100 penalty applies only after
7  a defendant is on notice of wage statement defects. See Perez v. WinnCompanies, Inc., 2014 WL
8  5823064, at *7-8 (E.D. Cal. 2014). The Court will therefore credit $703,811 ($757,950 x (13/14))
9  to the CAFA amount in controversy for the wage statement claim, adjusting Dr. Krock's $757,950
10 estimate to exclude data for the one-month period between June 7, 2021 and the May 7, 2021
11 removal.

**E. Attorneys' Fees**

AgReserves is correct that attorney fees are properly included in the amount in controversy, where, as here, a plaintiff sues on statutes providing for attorney fees. See Fritsch v. Swift Trans. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018). Also, while courts sometimes require a more robust showing as to the attorneys' fees at stake, AgReserves is correct that 25% of recovery is commonly used as a benchmark for reasonable attorneys' fees in class actions in the Ninth Circuit. See In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) (recognizing a 25% "benchmark" for attorneys' fees); Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003) (same).

Here, AgReserves has shown that it is more likely than not that at least $4,575,061.37 is at stake, after downward adjustments for data relating to the one-month period from May 7, 2021 through June 7, 2021 and excluding the amount at stake on waiting time claims, claims for reimbursement of business expenses and the unfair competition claim. Thus, attorneys' fees in the amount of $425,000—approximately 9% of the amount in controversy shown by AgReserves— would be sufficient to satisfy the amount-in-controversy requirement for CAFA removal. The Court finds that it is reasonable to assume that attorneys' fees will exceed 9% of the amount in controversy in a putative wage and hour class action such as this and will therefore deny Plaintiff's

motion to remand.

## CONCLUSION

As set forth above, AgReserves has met its burden to show that the amount in controversy in this action exceeds $5 million. Plaintiff does not dispute minimal diversity and the Court therefore finds removal is proper under CAFA.

## ORDER

Accordingly, IT IS HERBY ORDERED that Plaintiff's motion to remand (Doc. No. 8) is DENIED.

IT IS SO ORDERED.

Dated: December 16, 2021

SENIOR DISTRICT JUDGE